will hear Singh versus Barr. Good morning, and may it please the court, Russell Abertin on behalf of the petitioner, Mr. Sukhwinder Singh. The Board of Immigration Appeals erred in concluding that Mr. Singh's Michigan Law 750.82 is a removable offense as a crime involving moral turpitude. Mr. Singh's assault offense is not a crime involving moral turpitude because it does not meet the requirements for such an offense as set forth by the BIA and by this court in prior case law. There's a vast gray middle of CIMT law, crime involved in moral turpitude. Before we get to whether the conviction is a CIMT, what about the threshold issue of the counsel's concession? Counsel conceded in earlier proceedings that your client was removable. So why isn't he bound by that concession? Based on the framework that the BIA set forth in Velazquez, and this court set forth in Hutto, the requirements for allowing Mr. Singh to withdraw his first attorney's concession of removability have been met. First, that concession was incorrect. And then second, there are egregious circumstances. The case law sets out three examples, all of which I think are present in this case. First, that it was unreasonable for the original counsel to concede removability, when at that time, there was an unpublished Sixth Circuit decision finding that this offense is not a CIMT. Second, not allowing Mr. Singh to withdraw that concession produces an unjust result, because it will deprive him, it will strip him of his lawful permanent resident status, separate him from his wife, his daughter, his mother, and his sister. And finally, subsequent to that original concession, there's been intervening case law that makes it much more clear that his crime is not one that involves moral turpitude. Subsequent to that concession, the Sixth Circuit and two  The rule varies from from circuit to circuit, I believe, but in the Sixth Circuit, is an unpublished decision precedential? It is not precedential. But subsequently, so and so Hannah, Hannah really did change the law. Hannah did change the law by making it clear, I believe, at that point, that it was not a crime involving moral turpitude. Although the agency continued to disregard Hannah, and the law that was set out in the Sixth Circuit and continued to find or attempt to find that 750.82 is a crime involving moral turpitude. It was not until the Sixth Circuit's decision in Hernandez, where a lawful permanent resident had pled guilty to this offense and expressed reliance on Hannah, that the Sixth Circuit set forth once and for all, its determination that 750.82 is not categorically a CIMT, because it is possible to violate that statute in non turpitudinous ways. So is it fair to say that the law was murky at the time of the concession, and then subsequently, it became clearer, and change such that it was different from the understanding at the time the lawyers understanding at the time of the concession? Would that be kind of a fair characterization? Yes, that at the time, there were no published Sixth Circuit decisions trying to clarify the the law at the time of the So what would our holding be, we would have to say that egregious circumstances are present when the law is murky, but the law changes later. That we've never held anything like that in this court, for sure. That that when a concession is based, that when subsequent to a concession of removability, it becomes clear that that concession was an error, and that a criminal offense does not carry the conceded to removal consequences that it would be an egregious circumstance and unjust result to not allow the lawful permanent resident to get out from under that attorney's concession. And that's exactly what the Sixth Circuit did in the Hanna decision. Hanna had conceded removability. Subsequent to that concession, the Sixth Circuit issued the unpublished decision in a differencing case, finding that it was not a CIMT. The Hanna court then allowed Hanna to withdraw that concession. And then the Sixth Circuit went on to find that the statute was not a CIMT. And that's what we would be asking the court to do today in Mr. Sequinder Singh's matter. What is your view about the effect of the Sixth Circuit holding on this court's determination? While the Sixth Circuit's decision is not binding on the court, I think it is very powerful and very persuasive rulemaking or case law from the Sixth Circuit. But now in three decisions, the Sixth Circuit has carefully analyzed Michigan state law, case law in Michigan, the statute, and the jury instructions, and held that based on its interpretation of this body of state law, that 750.82 does not meet the requirements for a CIMT. That it's much closer to the types of assault offenses, like simple assault, or assault that doesn't result in great bodily injury, which are not CIMTs, than it is to the other end of the spectrum, where some assault offenses have been found to be CIMTs, because they are likely to cause great bodily injury, or are committed with a deadly weapon instead of a dangerous weapon. The Sixth Circuit, where Michigan is located, is perhaps the circuit that is best positioned to make this determination, since it has the most experience in reviewing cases involving 750.82, whether it's in the immigration context, or in the criminal context. You had said earlier that the agency ignored Hannah until Hernandez. Has the agency been following Hernandez? To the best of my knowledge, it has. They're following Hernandez. The immigration judges and the BIA have not found this conviction, this offense, to be a CIMT. Though Hernandez is relatively recent, it's only about two years old, and there hasn't been that much time to get a good sense of that. And what about, you know, you referred to Hutto. Hutto holds the petitioner to his lawyer's concession. How is Hutto distinguishable, if it is? What's different in Mr. Singh's case is that subsequent to the Sixth Circuit, holding that defense is not a removable offense. And then, but for that concession, Mr. Singh would not be, would not be removable and would be entitled to remain in the United States with his family. And I see that my time is up. All right, thank you. You have some time for rebuttal. We'll hear from the Attorney General. Morning, Your Honors. May it please the Court, at least as mercy of the Office of Immigration Litigation for the respondent. There's one primary issue before the Court today, as we have been discussing this morning, and that's whether the agency erred in reasonably relying on Mr. Singh's concession of removability made through counsel before the Immigration Court to affirm the immigration judge's removability finding. So just before you get to the concession, is counsel correct that that the agency is now following Hernandez and so that a conviction under 750.82 is not considered a crime involving moral turpitude? Your Honor, as we stated... Oh, hold on a second. There is someone who is not on mute, and we are getting interrupted. So whoever that person is, please put your phone on mute. Okay, it looks like that. As we argued in our brief, the Sixth Circuit, the Sixth Circuit's law is not binding in this circuit. So... I understand that. My question was, my question is, well, in the Sixth Circuit, is the agency following Hernandez? I was going to answer, Your Honor, in that sort of manner. Essentially... Good to answer the court's questions right away. What I was saying was that in the Sixth Circuit, the board would have to follow the Sixth Circuit's Hernandez decision. So the Sixth Circuit would be following the reasoning of Hernandez in any cases that arose in the Sixth Circuit. However, in the Second Circuit, where there has been no decision on this particular statute, the board certainly could revisit the issue here and decide in a similar manner as it originally did in Hernandez, that this particular statute was not a CMT. Why would we not defer to the Sixth Circuit, given that we're talking about Michigan law here? Well, Your Honor, I mean, unfortunately, we can't speak to whether or not this is a CMT here because the agency didn't make it, didn't reach the question of a CMT here. However, to the extent that like the Second Circuit generally would be looking at crimes involving moral turpitude, it could certainly consider the Sixth Circuit decision persuasive, but it certainly is entitled to make its own decision about whether or not it's a crime involving moral turpitude according to Second Circuit law. If we reach the issue, the agency's position is that... Frederick Keynes. Mr. Keynes, put yourself on mute, please. My question is, if we reach the issue, is it the agency's position that a conviction under this Michigan statute is not a crime involving moral turpitude? Your Honor, at this point, it's difficult for me to say simply because the agency didn't reach this issue. To that extent, we would say that this is essentially a Chenery issue, that like, I would actually say like in Hanna and like in this court's decision, I believe it's in Walla and I think it's Walla versus Mukasey and Ziedziak versus Barr, which is an unpublished case. This court has remanded to the board in cases in which it has not had the chance, I'm sorry, it's stated that in CMT cases that Chenery applies, that the board should have the ability to reach the issue in the first instance. Okay, why don't you address the concession issue? So, Your Honors, I think that the concession issue, as Your Honor pointed out, is really the threshold issue today. And that is, the board didn't even reach the CMT issue because it found the concession binding because the concession is evidence of removability. So, the question, the threshold question here is whether or not the agency  is holding the petitioner to the concession. The petitioner, in his brief, if I may say so, in some ways, his arguments about the Sixth Circuit laws is a bit of a red herring because he never gets over this threshold issue. The petitioner had two convictions. The argument is that holding the petitioner to the concession would be an unjust result because at a minimum, the law was murky when his lawyer made the concession. The law was then later cleared up or changed with Hannah and then Hernandez. Why would it be fair to hold him to that concession in these circumstances? Well, the question here, I believe, Your Honor, is whether or not the agency erred in taking that concession. I think one of the things that the petitioner does in his brief quite well is he buries the fact that there are actually two convictions here. There's not just one. There were two convictions in which the agency had alleged that were crimes involving moral turpitude. It could certainly be a tactical decision of the petitioner's counsel to concede removability before the court. Can you explain the tactical decision aspect of this, because I don't understand the point you're making. What would be the advantage to conceding removability when there's a legal argument to be made based on even if it was an unpublished decision at the time? Well, as Your Honor pointed out, the law at the time was murky. At the time, the only decision out there was an unpublished decision in the Supreme Court, which was a ruling decision in which it was questioned whether or not the statute was divisible. So there was no definitiveness as to whether or not this case was a CMT, even in the Sixth Circuit at the time. I guess I'm asking what's on the other side of the ledger in making that decision not to raise the argument, just assume that it's murky and there was an argument to be made. Well, the petitioner here conceded removability and immediately moved to two forms of relief he applied for here were cancellation of removal and 212-H waiver. In both of those forms of relief, a question is both the positive equities and the negative aspects. And here the negative aspect would be his criminal record. It's certainly one of the aspects of a criminal record is a person's both their acknowledgment of what they did wrong previously and their rehabilitation. In this particular instance, I can't say simply because we don't have a insight into what council was thinking. There was no ineffective assistance of council claim here. There was nothing else there. But it's possible that they were thinking that perhaps conceding removability was beneficial because the petitioner could simply move on to making evidence rehabilitation. That would be one. Counselor, I wanted to ask you about the BIA's decision issued in August of 2019, which is after Hernandez. There is virtually no analysis of the issue of the concession. There's one conclusory. There's a citation to Velasquez and then there is a conclusory sentence. That says the respondent has not argued or presented egregious circumstances sufficient to conclude that he should not be bound by his former council's judicial admissions. And that's it. And we don't know what the agency was thinking. The agency doesn't tell us its reasoning with respect to the three categories in Velasquez. Why shouldn't we send it back and at least have the agency do a more fulsome analysis? Well, Your Honor, the board points out why there isn't a more fulsome analysis there, which is that the petitioner, quote, has not argued or presented egregious circumstances sufficient to conclude. If you look back at the petitioner's brief before the board, the petitioner may have argued the essence of the CMT, but he gave no indication about why the concession should be rescinded. The matter of Velasquez had already been issued. Of course, this court's case in Hoodoo v. Holder, which is a 2009 case. If counsel's performance was so bad, wouldn't this fall within the third category? The concession was the result of unreasonable professional judgment. Well, Your Honor, I think there are two aspects of this. There's whether or not, as Judge Park pointed out, whether or not it was unreasonable at the time where the case law was uncertain and the petitioner could give a based the concession based on the law at the time. Now, the second aspect of that is what are the petitioner's administrative remedies at that point? The petitioner certainly could make the ineffective assistance of counsel claim, but they did not do so here. If I could bring I'm out of time, but if I could bring the court's attention again to the unpublished case that we cited in our brief, Haywood v. the board, the court there actually pointed out that Haywood had forfeited an ineffective assistance of counsel claim because he did not comply with the board's requirements for bringing such a claim under matter of Lozado. And similar to this particular case, the contention there in Haywood was that counsel, they were arguing that counsel was ineffective or suggesting that there was some sort of unjust result for conceding the convictions that issue constituted aggravated felonies. But in Haywood v. the board, this court specifically said, although it is now apparent that Haywood was not convicted of an aggravated felony, the law was less clear during his removal proceedings in 2005. So even if the state of law at the time of the removal proceedings presented viable arguments, counsel could have raised on Haywood's behalf. However, the determination of which crimes constituted aggravated felonies is not a straightforward question. So the, the, the. Why don't you finish up? Why don't you finish up? So you're on. I'm sorry, Your Honor, for those reasons, the respondent would say that they would respectfully ask the court to dismiss in part and deny in part the petition. Thank you very much. Thank you. We'll hear the rebuttal. Thank you. First, I would just like to address that Mr. Singh did have two convictions that were both alleged to be CIMTs. However, the only relevant one for determining whether he's removable is the assault conviction. If the assault conviction is not a CIMT, then his remaining conviction for destruction of property would not make him removable. He would still be admissible because it's a petty offense as a single CIMT subject to a maximum potential jail time of 93 days. It would not have resulted in the initiation of removal proceedings or a finding of removability. So the only key... Sir, his concession on that particular offense is, is not necessarily going to be subject to the same analysis. It's not, it's not removable, period. But he conceded that it was. He conceded that it was a CIMT. If the assault conviction is not a CIMT, it doesn't matter if the destruction of property is not a CIMT, it's not going to make him removable on that basis alone. So that concession is not, not relevant to the disposition of this case or his removability. Should the agency have done more to examine whether or not the particular offense was a CIMT rather than just accept the concession? Was the agency obligated to do more than accept the concession? The BIA certainly was, because by the time the BIA reviewed Mr. Singh's appeal, there were now two published Sixth Circuit decisions directly on point, both of which held quite clearly that this offense is not a CIMT. And because the Sixth Circuit is the circuit where Michigan is located, the vast majority of cases involving this offense would arise within the Sixth Circuit. And if it was going to seek to exercise Chevron or Brand X deference and ignore those two decisions, it should have explained why, though, because the Sixth Circuit was interpreting state law, the BIA does not receive any deference on its interpretation of Michigan law. The Sixth Circuit is able to review that de novo. Unlike the decision, unlike the case in Hutto, here, this is a purely legal question. It's not a factual question. And as a as a pure question of law, the BIA would have been able to review the removability issue de novo. And the court is able to review de novo as well without any deference to the BIA. Whether Michigan statute 750.82 is categorically a crime involving moral turpitude. All right. Thank you both. The court will reserve decision.